In matter of Heaton.

IN THE MATTER OF THE APPLICATION FOR SALE OF LANDS OF DENMAN F. HEATON AND EUGENE HEATON, INFANTS.

1. Upon a reference to examine and report whether the interest of infants requires and will be promoted by a sale of their lands, the master must report his own opinion, formed from facts, not that of others, nor an opinion founded upon that of others without facts. Mere opinion of witnesses is no evidence.

2. The testimony of the father and mother, owning a life estate in the premises, that the interest of the infants would be promoted by a sale, when they would be clearly benefited by the sale at the expense of the infants, should not be acted on and hardly received.

3. It is not a sufficient reason for the sale of infants' reversionary estate in lands, that the property is so much out of repair that it would now cost more to put it in tenantable repair than the income would justify, when the property has been in the actual possession of the life tenants. If they have suffered it to get out of repair, they are bound to put it in as good repair as it was when they entered upon it.

4. Upon an application for the sale of infants' reversion in land, the only question is, will the property bring as much now as it will at the death of the life tenant? If it will not, it is not for the interest of the infants to sell, if the life tenant is to receive a share of the proceeds, or of the income from them, according to the rules of this court.

On motion for order to sell infants' reversionary interest in lands, upon report of the master.

*Mr. J. W. Taylor*, for application.

THE CHANCELLOR.

The master reports that the interest of the infants requires and will be promoted by a sale of the lands in question, but that the sale should not be at a price below $6000 for the estate of the infants. That the premises are greatly in need of repair, and are deteriorating for the want thereof; and that an investment of the proceeds will be better than the retaining the property for future improvement in value.

This may be so, but I have before me all the evidence

taken in the case, including the exhibits, and have read them carefully, and I find in them nothing from which I can arrive at that conclusion, or from which the master could have arrived at it. The land is a tract of 35 acres, with a dwelling-house and other improvements, situate in Essex county, I presume in Springfield township, and is upon the road from Springfield to Burnt Mills. No evidence is given of its value, or the value of like lands adjacent to it. It does appear that the adjoining lot was once sold for a *large* price. This is very indefinite. It may have been for $2000 per acre, which in some parts of that township would not be a large price, or for $100 per acre, which in other parts would be a large price. There is in this case nothing from which I can form any opinion of the value of this land, between these prices or beyond them. I cannot, therefore, adjudge that the interest of the infants is not worth over $6000, or order a sale at that price. The master had no other evidence before him, and should not, from this, have made a report recommending the sale.

The witnesses give their opinion that the interest of the infants would be promoted by the sale. The master has evidently made the mistake of considering that the question referred to him was to be decided by the opinion of witnesses, and not by his own, from the facts. The Chancellor must act in this case as in all cases, upon his own opinion, formed from the facts; and the master, to whom it is referred to examine and report, must report his own opinion, not the opinion of others, or an opinion founded upon that of others. In these sales of infants' lands, as in all cases, mere opinion of a witness is no evidence; they must be determined by the opinion of the court, on facts. The witnesses in this case, too, are chiefly the father and mother of the infants, who own a life estate, and who would be clearly benefited by the sale at the expense of the infants. The opinion of either of them ought hardly to have been received, certainly not acted on. The only other opinion is

that of a son of the mother, who, though twenty-one, must be presumed to be still under her influence.

There is no ground, even on these opinions, for directing a sale at $6000; there is nothing from which I can infer that the property, or their estate in it, is not worth ten times that sum.

The reasons assigned for the sale are, first, that the property has been suffered to go out of repair, so that it would now cost more to put it in tenantable repair than the income would justify. The petitioner and his wife, the life tenant, have been in possession of this property about ten years. If it has been suffered to go out of repair during that time, they are bound to put it in good repair, or as good as it was when they entered upon it. A life tenant is bound not to commit or permit waste; he is bound to make the repairs needed by the natural and usual wear and tear; to keep the premises in their original condition; to rebuild fences; to repaint the house, and to renew the roof and other parts of a house when they decay, so that he may hand it over to the remainderman as good as at the commencement of the life estate. Rule 130, relating to infants' sales, is founded upon this principle. It is hard to conceive that the master was not familiar with the principle, and yet the report is made in entire disregard of it.

The second reason is, that the interest from the proceeds of the sale would be greater than any income to be derived from the farm, above repairs and taxes. The facts show, if they could be sold for $6000, that this is so. But this is no benefit to the infants, but to the life tenant only. The net proceeds of the property for the next ten years may be nothing. If their mother continues to live, this will be no loss to the infants, but only to her. It can be no reason for a sale until her death.

The only question in the case is, will this property bring as much now as it will at the death of the life tenant, ten or twenty years hence? If it will not, it is not for the interest of the infants to sell, that is, if the life tenant is to

receive a share of the proceeds, or of the income from them, according to the rules of this court.

There is nothing in the evidence that shows the location or vicinage of this property, or whether any, or what improvement in value can be expected in the future. The master had nothing on which to base his report as to this matter. And this court ought not to act in this most important matter of disposing of infants' estates, upon a master's report, made without regard to either law or evidence, or to give such report any weight.

And it is very questionable, as the statute makes the infants in these applications for sales the wards of this court, whether it is not the duty of the court in this case to appoint some special guardian to see that the life tenant performs her legal duty of putting and keeping these premises in repair; which both she and her husband testify that they have not done and do not intend to do.

The master reports that $6000 is a proper price at which to sell the estate of the infants, but the report as to the release of the life estate makes it seem that he intended this sum to include the interest of the life tenant; in this respect it is so uncertain that it could not be acted upon.

The interest of the infants in this property is uncertain, and such as it is hard to suppose that any person of ordinary prudence would purchase, unless at a very low price. The property was devised to their mother for life, and after her death to be equally divided among her heirs. The Court of Errors in *Demarest* v. *Hopper*, 2 *Zab.* 599, held that such devise gave to the children a vested estate. This decision, which surprised such of the profession as were familiar with the common law doctrine of contingent remainders, has, by acquiescence, become the settled law of the state; and it is wise legislation, at least, if it did change the old rules. But by it the estate of the children will open and let in any child of the mother yet to be born (and her age or condition no where appears), and if either of them die before the mother, no conveyance by such child, or by

order of this court, would convey any estate. If all three should so die the purchaser would take nothing at all. In such case it would appear improper for this court to offer for sale the property of infants under circumstances that must cause a great sacrifice.

Yet if a purchaser is found willing to buy at a price which would be the value of the property, was there no risk or contingency, it might be the duty of the court to order the sale. But with a life whose probable duration may be twenty years, it is so difficult to judge what will be the value of the fee at the termination of that life, that it is almost impossible to estimate its present value. If at the end of twenty years this property would be of twice its present market value, which is not an improbable or extravagant estimate, what the infants should receive is double what it should be calculated on its present value; and there is little property in the flourishing and prosperous parts of the state that has not doubled in value in the last twenty years, and that will not have the like increase in the next twenty. The advantage of present enjoyment belongs to the life tenant; future increase in value to the remainderman; the value of the fee is composed of both. By a sale, the remainderman loses this advantage and shares it with the life tenant.

If it is deemed advisable to press this application further, it may be referred to another special master to inquire and report upon the facts, to be ascertained through witnesses. The sale will not be ordered upon the present report.